IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

APR 2 5 2012

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

| | | |
|---|---|---|
| KENNETH MICHAEL PLUMMER, II, ET AL., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | NO. 4:11-CV-804-A |
| CITIMORTGAGE, INC., | § § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Now pending in the above-captioned action is the motion to dismiss for failure to state a claim, filed by defendant, CitiMortgage, Inc. ("CitiMortgage"), on December 20, 2011. Plaintiffs, Kenneth Michael Plummer, II, and Sami Doran Plummer, filed no response to the motion, and the issues are ripe for consideration. After having considered such motion, the record, the amended pleading filed by plaintiffs on December 6, 2011, and pertinent legal authorities, the court has concluded that the motion to dismiss should be granted.[1]

---

[1]The court has subject matter jurisdiction over plaintiffs' claims against CitiMortgage, Inc. ("CitiMortgage") by reason of 28 U.S.C. §§ 1441 and 1331, because plaintiffs' allegations concerning the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA") arise under the laws of the United States. See 12 U.S.C. §§ 2605, 2609, 2610; 15 U.S.C. § 1601-1667f. The court has supplemental jurisdiction over all other claims. 28 U.S.C. § 1367.

I.

### Background

Plaintiffs initiated this removed action by a pleading filed in the District Court of Tarrant County, 342nd Judicial District, on October 19, 2011, against CitiMortgage, in Cause No. 342-256063-11.  Plaintiffs filed an amended petition and application for restraining order on October 23, 2011.

CitiMortgage removed the action to this court on November 11, 2011.  The court, by order of November 22, 2011, ordered plaintiffs to file an amended complaint that complied with the requirements of Rule 8(a), Rule 10(a), and if applicable, Rule 9 of the Federal Rules of Civil Procedure.  Plaintiffs filed an amended complaint ("Complaint") on December 6, 2011.

In summary, plaintiffs made the following allegations of fact in their Complaint:

On March 22, 2002, in "Loan No. 622571556," plaintiffs executed a note in the principal amount of $128,250.00, which was secured by a deed of trust to their home at 224 Eagle Court, Bedford, Texas 76021.  Compl. at 3.  On March 21, 2005, in "Loan No. 0648160439," plaintiffs "signed the new Deed of Trust, with Lender 'ABN Amro Mortgage Group Inc.,' to re-finance their loan . . . in the principal amount of $128,550.00."  Id.  On January 2, 2008, in "Loan No. 657942854," plaintiffs "took out a

2

Home Equity Line of Credit from 'ABN Amro Mortgage Group Inc.,' for an amount [of] $140,000.00." <u>Id.</u>

Plaintiffs subsequently "fell into financial troubles" and contacted CitiMortgage about available options to avoid foreclosure. <u>Id.</u> at 3. They applied for a loan modification under the Home Affordability Program, but did not qualify for such a program. <u>Id.</u> at 4. CitiMortgage informed plaintiffs via letter of another loan modification program that could help them. <u>Id.</u> "When calling the mortgage company, Plaintiffs were told that they should not make any payments until the loan modification was approved." <u>Id.</u>

On July 29, 2011, Plaintiffs received "a letter from Heather Jackson, Homeowner Support Specialist CitiMortgage Inc. (CITI), stating that he [would] guide them through the modification process," that led them "to believe that they would receive assistance." <u>Id.</u> As plaintiffs worked "closely with CITI" in the process, they "repeatedly provided income verification approximately every 60 days in anticipation of the loan modification being approved." <u>Id.</u> Again, they "were instructed not to make payments until they received a package from the loss mitigation department." <u>Id.</u>

Despite these efforts, "[p]laintiffs still [did] not receive[] a response as to their loan modification application."

3

Id.  Instead, the law firm of Barrett Daffin Frappier Turner &
Engel, LLP, sent plaintiffs a letter, notifying them that the
property was scheduled for foreclosure on November 1, 2011.  Id.

Plaintiffs "tendered a Qualified Written Request under the
Real Estate Settlement Procedures Act ("RESPA") . . . as well as
a request under the Truth in Lending Act . . . to Defendants to
ascertain whether CITI [was] vested with legal authority" to
foreclose, but "Defendants . . . failed to respond."  Id. at 4-5
(citing to 12 U.S.C. § 2605(e) and 15 U.S.C. § 1601).

CitiMortgage never produced any documentary evidence to
establish that it had the "legal power and authority to
foreclose," such as "proof of ownership of the note and
verification of the debt," or "a loan servicing agreement for the
property."  Id. at 5.  Plaintiffs unsuccessfully sought to obtain
this information from the law firm and the individuals
"designated as Substitute Trustee(s), in the Notice to
Substitute's Trustee Sale," namely "J. Clarke, R. Frank, T. Ross,
or A. Holland."  Id. at 5.

Plaintiffs believe that the "amount alleged by the
Defendants to be owed by Plaintiffs for the property is
inaccurate"; and plaintiffs "have the means to satisfy and
correct any indebtedness owed to Holder of the Promissory Note."

4

Id. at 6.  Plaintiffs' "credit has been irreparably impacted,"
due to "Defendant's deceptive and unconscionable actions." Id.

Further, "[d]efendants' attempt of an assignment of the
mortgage that was already bifurcated by the original lender back
to the Note, was not in compliance with lien perfection according
to Texas Local Government Code, chapter 192, section. 007." Id.
at 5.[2]  Under this theory, because the note and deed of trust
were "bifurcated," any subsequent assignment of the loan was
rendered invalid.  Id. at 5-6.[3]

In their Complaint, Plaintiffs asserted claims against
CitiMortgage for common-law fraud, breach of contract, and
violations of the Texas Property Code ("Property Code"), the
Texas Finance Code ("Finance Code"), the Texas Deceptive Trade
Practices Act ("DTPA"), the Real Estate Settlement Procedures Act
("RESPA"), and the Truth in Lending Act ("TILA").[4]  As relief,

---

[2]This "assignment" apparently violated section 192.007(a) of the Texas Local Government Code:

> To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

Tex. Loc. Gov't Code 192.007(a); Compl. at 5.

[3]It is unclear which note and deed of trust plaintiffs complain of, given that the Complaint references four different loan transactions that could have potentially involved a note and deed of trust. Compl. at 3.

[4]In support of these claims, plaintiffs have included two sections detailing their theories

(continued...)

plaintiffs sought an accounting, attorney's fees and costs, injunctive relief allowing them to maintain possession and regain title to the property, and declaratory relief stating that CitiMortgage must produce the "Original Promissory Note" prior to foreclosing on the property.

In CitiMortgage's motion to dismiss filed December 20, 2011, it argued, _inter alia_, that plaintiffs' Complaint failed to state a claim upon which relief can be granted because plaintiffs merely recited the elements of each cause of action and asserted legal conclusions, but alleged no facts in support thereof.

II.

Analysis

A.   The Rule 8(a)(2) Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

---

[4](...continued)
of recovery, titled "Enforceability of the Negotiable Instrument" and "Authority to Foreclose." Compl. at 6-8.

quotation marks and ellipsis omitted). Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiffs to do more than
simply allege legal conclusions or recite the elements of a cause
of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a
court must accept all of the factual allegations in the complaint
as true, it need not credit bare legal conclusions that are
unsupported by any factual underpinnings. See Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal
conclusions can provide the framework of a complaint, they must
be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to
state a claim, the facts pleaded must allow the court to infer
that the plaintiffs' right to relief is plausible. Iqbal, 129 S.
Ct. at 1950. To allege a plausible right to relief, the facts
pleaded must suggest liability; allegations that are merely
consistent with unlawful conduct are insufficient. Twombly, 550
U.S. at 566-69. "Determining whether a complaint states a
plausible claim for relief . . . [is] a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense." Iqbal, 129 S. Ct. at 1950.

B.    Applying the Standards to the Complaint

Proceeding only on the basis of the information before the court in plaintiffs' Complaint, the court finds that the allegations fall short of the pleading standards.  Plaintiffs' Complaint fails to meet the standard set forth in Rule 8(a)(2), as interpreted by the Supreme Court in Twombly and Iqbal.  The court agrees with defendant that the allegations therein are nothing more than conclusory assertions.  The Complaint contains inadequate factual allegations to support the claims or causes of action and is therefore insufficient to give defendant notice of plaintiffs' claims against it.

The court considers plaintiffs' theories of recovery in the following order: first, the common-law fraud claim; next, the claim for violations of Property Code; next, the claim for violations of Finance Code; next, the claim for violations of the DTPA; next, the claim for violations of RESPA; next, the claim for violations of TILA; next, the breach of contract claim; next, the request for an accounting; next, the suit to quiet title; and finally, the request for declaratory relief.

1.    Common-Law Fraud Claim

Plaintiffs have not stated a claim for common-law fraud.  To state a claim for fraud, plaintiffs must show: (1) the defendant made a false material representation; (2) knowingly or

recklessly; (3) that was intended to induce plaintiffs to act upon the representation; and (4) plaintiffs actually and justifiably relied upon the representation and suffered injury. Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).

Additionally, plaintiffs' fraud claim is governed by the pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  See Lone Star Fund V (U.S.), LP v. Barclays Bank PLC, 594 F.3d 383, 387 n.3 (5th Cir. 2010).  Rule 9(b) of the Federal Rules of Civil Procedure requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks and citations omitted).  To satisfy this requirement, plaintiffs must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." Tuchman v. DCS Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted).

The allegations of fraud fail to satisfy Rule 9(b)'s heightened pleading requirements.  The court cannot pinpoint a

single instance where plaintiffs have alleged all of the
requisite elements for fraud: the content of the false
representation, the identity of the speaker, the benefit obtained
by that speaker, and the date the representation was made.  In
fact, almost all the allegations concerning plaintiffs'
communications with defendant are not accompanied by any specific
date or description of the speaker's identity.  Incomplete
identifications of the speaker and vague references to the date
are simply not sufficient to give defendant fair notice of when
the allegations took place.  Moreover, plaintiffs do not
satisfactorily explain what was supposedly fraudulent about each
alleged statement or what would support a conclusion that they
justifiably relied on any of the statements mentioned in the
Complaint.  Lewis v. Bank of Am. N.A., 343 F.3d 540, 546 (5th
Cir. 2003).  The allegations in the Complaint therefore fail to
satisfy the Rule 9(b) heightened pleading requirements for fraud.
Plaintiffs are not entitled to any relief, and their common-law
fraud claim must be dismissed.

    2.   The Texas Property Code Claim

The court now considers plaintiffs' claims concerning
violations of the Property Code.  Under the section titled
"Authority to Foreclose" in the Complaint, plaintiffs state that
CitiMortgage's "purported substitute trustee" allegedly did not

follow "the proper procedural rules and requirements," thus rendering defective "the notices of foreclosure sale and notice of default."[5]  Compl. at 8.  Plaintiffs later generally allude to "Texas Property Code Section 51.001 et seq," without specifying which statutory provisions were not followed.  Id. at 14.  These allegations do not state with particularity what were the supposed deficiencies in the foreclosure process.  The court cannot divine what "procedural rules and requirements" were allegedly deficient--such as a failure to provide a type of foreclosure notice, or whether some of the mandatory information was omitted from the notices.  The Complaint is devoid of any factual allegations that would permit the court to determine what constituted the complained-of deficiencies in the notices provided by the substitute trustee.

In short, plaintiffs have failed to state a claim for a violation of the Property Code.  This claim is therefore being dismissed.

---

[5]Under the section titled "Authority to Foreclose," plaintiffs alleged that, "[a]ssuming the note is, in fact, enforceable, Defendant has failed to follow the proper procedures in attempting to collect the alleged debt under the terms of the deed of trust, note and the requirements of the Texas Property Code."  Compl. at 8.  Consequently, the "non-judicial foreclosure . . . would be wholly invalid and in violation of the Texas Property Code and fair debt collection laws."  Id.

3.   The Texas Finance Code Claim

The court now turns to the claim for violations of the Finance Code.  See Tex. Fin. Code §§ 392.301, .303, .304; Compl. at 9-10.  Plaintiffs base their claim on the allegation that CitiMortgage wrongfully threatened foreclosure.  Compl. at 6-8. Under the section titled "Enforceability of the Negotiable Instrument," plaintiffs allege that defendant cannot foreclose on the property until it has "shown" that it is the "'Holder' of the Note."  Id. at 7.  Specifically, plaintiffs allege "[d]efendant failed to properly transfer the lien prior to the acceleration and collection action on the Note,"[6] and "the mortgagee listed on the above referenced Notice of Trustees Sale is not the current holder of the original note."  Id. at 6.  Additionally, defendant ignored plaintiffs' September 26, 2011 request "to produce all documents establishing chain of transfer and assignment regarding Loan No. 1120147935," as "required by the Texas Business and Commerce Code."  Id. at 6-7 (citing to Tex. Bus. Comm. Code Ann. § 3.301).[7]

---

[6]With respect to its lien-transfer argument, plaintiffs alleged: "Plaintiffs believe that not all assignments and transfers were complete prior to sending the Notice to Cure Default. Plaintiffs believe that not all assignments and transfers were complete prior to sending the Acceleration Notice. Therefore Plaintiffs believe that Defendant cannot legally foreclose at this time." Compl. at 6.

[7]Plaintiffs alleged they are entitled to the production of the original note because:

(continued...)

12

The thrust of plaintiffs' claim is that CitiMortgage must prove it either owns or holds the note prior to instituting foreclosure. This so-called "show me the note" theory has been repeatedly rejected in Texas. See, e.g., Broyles v. Chase Home Fin., No. 3-10-CV-2256-G, 2011 WL 1428904, at *3 (N.D. Tex. Apr. 13, 2011); Coleman v. Bank of Am., N.A., No. 3-11-CV-0430-G-BD, 2011 WL 2516169, at *2 (N.D. Tex. May 27, 2011). A party is not required to produce the promissory note prior to foreclosing under chapter 51 of the Texas Property Code. See, e.g., Crear v. JP Morgan Chase Bank, N.A., No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011).[8] Accordingly, CitiMortgage is not required to produce the original note to plaintiffs in order to foreclose on the property.

Plaintiffs further question CitiMortgage's ability to foreclose by challenging the assignment of the note and deed of

---

[7](...continued)
The Texas Business and Commerce Code states that only a "Holder" of an instrument, or a non-holder in possession of the instrument, is entitled to enforce the instrument, whether that be through enforcement of the deed of trust or any other manner. TEX.BUS. & COM. CODE ANN. § 3.301 (Vernon 1987).
Compl. at 6.

[8]The Fifth Circuit has rejected the validity of the show-me-the-note theory, in stating that: The Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note. See Tex. Prop. Code Ann. §§ 51.002, 51.0025 (establishing the notice required prior to a foreclosure sale pursuant to a power of sale).
Crear v. JP Morgan Chase Bank, N.A., No. 10-10875, 2011 WL 1129574, at *1 n.l (5th Cir. Mar. 28, 2011) (emphasis added).

trust.  Plaintiffs allege that the loan was already "bifurcated" and thus, any subsequent assignment of the note and deed of trust was somehow invalid.  Compl. at 5.  However, plaintiffs have not alleged sufficient facts in support of their theories.  For instance, it is not clear from the Complaint which loan transaction plaintiffs are complaining of.  The Complaint initially lists and describes three loan transactions (Loan No. 622571556, Loan No. 0648160439, and Loan No. 657942854), id. at 3, but the show-me-the-note challenge is lodged at a fourth loan transaction not previously listed or described: Loan No. 1120147935, id. at 7.  There are no factual allegations explaining the circumstances giving rise to this loan or naming the individuals party to the loan.  Thus, the court cannot discern from the pleading what allegedly made this assignment invalid.

Moreover, plaintiffs offer merely conclusory allegations to support the claim that sections of the Finance Code have been violated.  The Complaint is devoid of any factual allegations to support the claims that defendant's conduct amounted to "fraudulent, deceptive, and/or misleading representations."[9]  Id.

---

[9]Plaintiffs allege that CitiMortgage's actions were "illegal under the Texas Finance Code 392.301" and the conduct constituted "fraudulent, deceptive, and/or misleading representations actionable under the Texas Finance Code Sections 392.303 and 392.304." Id. at 9.

at 9.  The court therefore concludes that plaintiffs have not
stated any claims for violations arising under the Finance Code.

     4.  <u>DTPA Claim</u>

     The court now turns to the related issue of whether
plaintiffs have pleaded a plausible DTPA claim against
CitiMortgage.  Plaintiffs contended they were entitled to recover
under the DTPA for CitiMortgage's violations of the Finance Code
by incorporation into the DTPA.  As support, plaintiffs relied on
the alleged violations of the Finance Code as one basis of
recovery under the DTPA.  <u>Id.</u> at 10-11; Tex. Fin. Code
§ 392.404(a) ("A violation of this chapter [the TDCPA] is a
deceptive trade practice under Subchapter E, Chapter 17, Business
& Commerce Code [the DTPA], and is actionable under that
subchapter.").  Many of the allegations underlying these claims
are essentially the same as those the court has already addressed
and dismissed in the Finance Code claim. To the extent that
plaintiffs' DTPA claim is derivative of their Finance Code claim,
CitiMortgage is entitled to dismissal of the DTPA claim on those
grounds.

     As additional grounds for relief under the DTPA, plaintiffs
alleged that defendant engaged in "unconscionable acts" and made
"misrepresentations of their services."  Compl. at 10-12.  To
recover under the DTPA, a plaintiff must show: (1) plaintiff is a

consumer; (2) defendant can be sued under the DTPA; (3) defendant violated a specific provision of the DTPA; and (4) defendant's violation is a producing cause of the plaintiff's damages.  Tex. Bus. & Com. Code §§ 17.41-17.63; <u>Amstadt v. U.S. Brass Corp.</u>, 919 S.W.2d 644, 649 (Tex. 1996).  The allegations do not provide any facts to support a conclusion that defendant's violation is a producing cause of plaintiffs' damages.  Thus, not all of the requisite elements of a DTPA action have been properly alleged. The court is therefore dismissing the DTPA claim.

     5.   <u>The RESPA Claim</u>

In their RESPA claim, plaintiffs alleged that CitiMortgage failed to respond to plaintiffs' qualified written request tendered pursuant to 12 U.S.C. § 2605(e).  Compl. at 4.  To prevail on a § 2605(e) claim, plaintiffs must plead and prove, among other things, that they sent correspondence meeting the requirements of a qualified written request to CitiMortgage.  <u>See</u> 12 U.S.C. §§ 2605(e), 2605(f)(1).

The court concludes that plaintiffs failed to sufficiently allege in their Complaint that they sent any communication meeting the requirements of a qualified written request.  The Complaint does not state that the correspondence sent included information that enabled CitiMortgage to "identify the name and account of the borrower." 12 U.S.C. § 2605(e)(1)(B)(i).  The

Complaint also does not state that the correspondence either
included "a statement of the reasons for the belief . . . that
the account [was in error]" or that it provided CitiMortgage with
sufficient detail about the information plaintiffs sought.  Id.
§ 2605(e)(1)(B)(ii).  Furthermore, the Complaint provides the
court with no date as to when plaintiffs allegedly sent the
correspondence.  Thus, plaintiffs have not sufficiently stated a
claim for relief under this provision of RESPA.

    6. The TILA Claim

    The court now turns to the claim for violations of TILA.  In
their TILA claim, plaintiffs complain they did not receive any
information from defendants after filing some requests pursuant
to 15 U.S.C. § 1601.  Compl. at 4.  Problematically, however,
plaintiffs do not specify which requests they filed and what
information they sought.

    The court concludes that plaintiffs have failed to allege
sufficient facts to show that they are plausibly entitled to
relief.  The Complaint lacks any allegations to show there has
been a violation of an applicable provision of TILA.  A general
reference to "Truth In Lending Act 15 U.S.C., Section 1601" is
simply insufficient to give CitiMortgage fair notice of the
claims asserted against it.  The court concludes that the
Complaint does not allege sufficient facts to show that defendant

17

has committed a violation of the TILA.  Plaintiffs' TILA claim is
therefore being dismissed.

    7.   <u>Breach of Contract Claim</u>

    For their breach of contract claim, plaintiffs alleged that
"[i]f the Court determines that Defendants are, in fact, the
proper holder of the note," there were "various breaches of
contract by Defendants."  Compl. at 14.[10]  The court concludes
that plaintiffs cannot state a breach of contract claim arising
from this purported loan modification application.  By their own
allegations, plaintiffs state that they received no response on
the status of their loan modification application from
CitiMortgage.  <u>Id.</u> at 5.  The court finds nothing in the
Complaint to support an allegation that the lack of a response
from CitiMortgage on the application resulted in a binding loan
modification agreement. These allegations concerning the loan
modification application are wholly conclusory, devoid of any
factual support, and do not amount to a breach of contract claim.

    The other grounds for breach of contract are similarly
conclusory.  For example, plaintiffs' complaint that defendant's
"assigning or transferring the note" was not "in accordance with
the terms of the contract" does not specify what contractual

---

    [10]Plaintiffs also alleged that "[a]ll conditions precedent have been met prior to filing" the
Complaint." Compl. at 14.

terms were violated or what was improper about these actions.
Id. at 14.   The same is true of plaintiffs' allegations against
defendant concerning the appointment of the substitute trustee,
the duty to "provide timely and accurate account statements," the
provision of "false information," and engaging in "improper
collection action."   Id.   The court cannot discern, based on
these allegations, what provisions of the contract defendant
allegedly failed to follow.   Plaintiffs have not provided any
additional factual allegations to indicate what these contractual
terms required, and have failed, for instance, to attach any
document amounting to a contract that would shed further light on
these statements.

     As for the HUD violations, plaintiffs also allege that
unspecified violations of the HUD rules and regulations provide
grounds for a breach of contract claim.[11]   Id. at 13.
Plaintiffs' breach of contract claims on these additional grounds
do not state a claim for relief.   In order to prevail on their
breach of contract claim, plaintiffs must establish (1) the
existence of a valid contract between plaintiffs and defendant,
(2) the plaintiffs' performance or tender of performance, (3) the

---

      [11]Plaintiffs argued that although the HUD "regulations do not provide for an independent
private cause of action," they "may be used to establish a standard of care and an enumerated
understanding between the parties to the contract of the [applicable] rules and standards," when
"incorporated by reference into a contract." Compl. at 13.

defendant's breach of the contract, and (4) the plaintiffs'
damage as a result of the breach.  <u>Hackberry Creek Country Club,
Inc. v. Hackberry Creek Home Owners Ass'n</u>, 205 S.W.3d 46, 55
(Tex. App.--Dallas 2006, pet. denied).

Plaintiffs fail to satisfactorily plead all of these
elements.  With respect to performance, plaintiffs have not
alleged they have timely performed with their payment
obligations, or that they were excused from further performance.
As for breach, the Complaint makes vague references to violations
of RESPA, TILA and HUD, but it remains unclear what actions
amounted to a breach, much less what statutory requirements
defendant did not comply with.  As for injury, the Complaint is
devoid of any facts or allegations to show that plaintiffs have
suffered any injury, much less any monetary loss.  Only damages
to their credit reputation are alleged, <u>id.</u> at 13, and those
allegations are simply too speculative to show either causation
or injury, especially given that the foreclosure has not yet
occurred.  Accordingly, plaintiffs have not pleaded a plausible
breach of contract claim under any of these grounds.

8.   <u>Suit to Quiet Title</u>

The court next considers plaintiffs' suit to quiet title.
To quiet title in their favor, plaintiffs "must allege right,
title, or ownership in [themselves] with sufficient certainty to

20

enable the court to see [they have] a right of ownership that will warrant judicial interference." Wright v. Matthews, 26 S.W.3d 575, 578 (Tex. App.--Beaumont 2000, pet. denied). Plaintiffs have alleged no factual allegations whatsoever regarding the strength of their title to the property. Accordingly, plaintiffs' suit to quiet title is being denied.

     9.   Accounting

     The court now turns to the request for an accounting. In the Complaint, plaintiffs request "an order for an accounting of all transactions on this mortgage loan," to determine "whether the payment obligation on the original note has in fact been satisfied" and "which entity (or investor) is the legitimate holder of Plaintiffs' mortgage." Compl. at 14. Because the Complaint has stated no cause of action that allows for an accounting, this request is being denied.

     10.   Request for Declaratory Relief

     Finally, plaintiffs request a declaratory judgment from the court ordering that CitiMortgage "must produce the original note prior to any action to enforce the note," and that "CITI has acted unconscionably towards Plaintiff." Id. at 15. Because none of their claims state a basis for recovery, however, plaintiffs' request for declaratory relief is being denied.

III.

Conclusion

The court therefore concludes that plaintiffs have not alleged any facts that would allow the court to draw the reasonable inference that plaintiffs are entitled to any relief, or that CitiMortgage is liable to plaintiffs under any of the theories of liability alleged in the Complaint.  As a result, plaintiffs' Complaint fails to state a plausible claim to relief and should be dismissed.

For the reasons given above,

The court ORDERS that all claims and causes of action asserted by plaintiffs against defendant be, and are hereby, dismissed with prejudice.

SIGNED April 25, 2012.

_____
JOHN McBRYDE
United States District Judge